Good morning. Thank you. Please accord. I'm Tim Sweeney for Lance Tobias. It's a pleasure to be here. Could I please reserve three minutes for rebuttal? This case is about the safety valve, which is a statutory provision to numb the pain of mandatory minimums for people who truly cooperate with relatively lower level offenders. This man, Mr. Tobias, 57 years old, facing 10 years in prison, truly cooperated. He did from the get-go. From the very beginning, he pled guilty. He made an extensive proffer to the government, tended by the Assistant U.S. Attorney and by two of the agents from the Postal Service. Did everything he was supposed to do. Everything. What is in the record about the proffer? I've seen a sealed document that's a two-page document. Is that all that's in the record? Well, there's the testimony and the colloquy at the two sentencing hearings about what occurred. But that is, that was the record document that the court requested after the first hearing, the first day of the sentencing. He asked for something to see what had been done. And as I understand it, the government made some, your contention, the government made some representation at the sentencing that the safety valve was warranted here? Yes. And what was that exactly? What happened? Well, I mean, the government got up and said, yeah, we think he's entitled to the safety valve. He made an extremely forthright proffer. It was truthful. It was consistent with what we already knew. It corroborated what we already knew. It was satisfactory. I mean, even the defense counsel represented at the second day of the hearing that the two guys from the post office who were there said, this is the best proffer we've ever had. I mean, this was an A plus by all relevant measures of the people who were there. Because that's the thing about the safety valve. You're proffering to the government. You know, they're the ones that grade the paper, really. I mean, if they're happy with the proffer. Would you agree, though, that, I mean, the statute makes clear that the government gives a recommendation. Yeah. And that the ultimate decision is the district courts. Absolutely. So, if we adopted a rule now where the government agrees that there is an adequate cooperation, the district court has to grant a safety valve. That would suggest that we're rewriting the statute in some respects, because it's just a recommendation into a modified mandate. Yeah, I don't think we have... So when can a district court object? Yeah, right. I think that's the right analysis. I mean, I think that the district court then, when you have everybody on board saying, this meets the requirements, the district court has to, okay, where's the evidence that it's not there? They were in the exact same position as the government would be under cases like Barron, where you've got to be able to point to evidence that the safety valve isn't met. See, that's what's missing here. There's no evidence that Lance failed to do what he was required to do. You don't think it's... As I understood the district court's concern, it was just that he talked about being, what the terms of the words were, but he didn't really give details about how he communicated with his customers. And that seems, it seems to me that the district court can make common sense conclusions. This wouldn't be outside of his personal knowledge about how he communicated with customers. It might be outside of his personal knowledge, who the customers actually were. It might have been anonymous. But he didn't really go into much detail about how he developed customer relationships, how he communicated with them. I think he did. I mean, I think he did do that. So what is the evidence? It's stated in the proffer that he... He did. Well, I mean, that's a summary. You know, everybody was there, said he gave us everything we needed, everything we wanted. He told us about what he did. I mean, I don't know what more you can really do. The government, sure, the judge can have an instinct. Yeah, I don't think I believe you. But the case law says, you know, that kind of gut instinct isn't sufficient. There's more than just gut instinct, though. The district judge pointed out that this guy had been in business for like 15 years. Yeah, that's true. And he was also getting a 5% commission on sales. So I think from the district court's perspective, that was enough factual basis to question why Tobias did not give more information about his customers. Here's my response. Where's the evidence that he knew what you say, what you just represented there, Judge Boyce? There's no evidence that he knew the names of these people or that he knew the information that you're saying or the judge said was absent. There's none. I mean, in cases where... But surely he had to deal with somebody. I mean, I understand he dealt with intermediaries, if that's what the proffer is. But he would have at least known who the intermediaries were. Not by their names. No, I think the How about the description of them? Did the government ask? Was he wearing Air Jordans or Nikes? What good is that? How does that advance the ball? Oh, he's a redhead guy with Air Jordans. Oh, there you go. Now we're on our way. The cases where the court has reversed in situations is where there's evidence, where there's some conflicting testimony. For example, somebody had made a statement in a recording. Or there's been some evidence of certain knowledge that you know the guy has. And then when it comes time to the proffer, there's a flip-flop or there's something that contradicts that evidence. You don't have that here. I don't think so. I mean, I think it's... I'm not sure. I don't know because I wasn't at the proffer. He probably did. He probably did say that. I think when you show up at a hearing and everybody who was at the proffer says, yeah, this was an A+. And now people are looking back afterwards and saying, well, couldn't you have told me what color hair he had? Or couldn't you have told me what kind of shoes he was wearing? Or couldn't you have told me how many times this happened? They could have asked those questions. He could have provided that. Maybe so. But everybody was giving thumbs up, A+. I mean, what more are you supposed to do if you're Tobias? You're supposed to make your proffer before the sentencing hearing. He did it and everybody says A+. And then he shows up and the judge says, well, it's not an A-plus to me because I think you should have known this. Okay, well, no, I don't know this. Okay, I don't know this. You don't have to make stuff up. I mean, that's the other point. What if it was true? I see your point about you think you told everything because the government is asking you questions. I do believe we have case law that suggests you have to be proactive and not just respond to the questions but disclose everything. But I do see your point about when is enough enough. But is there a way to remedy this if a district judge has concerns about whether you've given enough information that you could somehow have a supplemental proffer or do you think the statute would prohibit it? I don't know that it would. I mean, I don't know that it would. It's just before sentencing. Yeah, before the sentencing. But here's the thing. I think the case law you're talking about, Judge Murphy, is cases where the proffer occurred and the government didn't think it was good enough. Every single case. I'm not aware of a case. Maybe the court is. Maybe Margaret will get up and tell you about one. But I'm not aware of a case like this where everybody was giving thumbs up A+. And the judge says, no, I'm not giving you the safety valve. No way. Sorry. I don't buy it. That's basically what happened here. I don't buy it. You know, without any evidence. Right, but that just puts you back into Judge Murphy's concern that what we would be saying is if the government says this was a good enough proffer, then the judge either accepts it or gets reversed on the field. Well, no. If the judge can do what, for example, in Barron, what the prosecutor failed to do in Barron, which is why this court reversed and said it was wrong to deny the safety valve. But the woman in that case couldn't explain where the $105,000 came from. And she said, I don't know where it came from. I really don't know. And the court looked at it and said, well, you know, there's no evidence that the government ever asked her about this cash. There's no evidence that she was evasive or failed to cooperate. And that's exactly this case. And isn't Barron a case, correct me if I'm wrong, but isn't Barron a case where the government denied the safety valve? Exactly. Right, but The government didn't think it was good enough. Right, the government didn't think it was good enough. And the court can say, I think it is. But your case is the government thinks it's good enough. And you want us to say, if the government thinks it's good enough, the district court must accept it. I'm not saying that. I'm saying that if the government, if everybody in the room says this was an A-plus proffer, and the trial judge thinks, I'm not buying it, the trial judge now stands in the shoes of the failed prosecutor in Barron. You've got to point to some evidence that shows that Tobias, you know, was inconsistent, or that he made statements that contradicted prior information. Why is there evidence that, so being inconsistent, that's one theory. Another theory would be just, there's obvious information that would have been within his personal knowledge. But there's not here. There's not that he failed to disclose. But the district judge But he's wrong. I mean, he's wrong. You don't have to make up names. You don't know. It's unreasonable. Well, the thing he was disputing was he didn't know the names, he didn't give phone numbers. Those were the principal areas of dispute. Now, there's no evidence, none, none, that he knew any of these names. In fact, common sense tells you that people don't go by their names in drug transactions. The names are all fake. Are they, you know, John Brown? How helpful is it to the government? Oh, yeah, his name's John Brown and he has red hair. Your point then would be that that would be within his personal knowledge, but that it just would not be material. And it wasn't asked for, just like in Barron. You know, the guy whose safety valve was rejected in Barron was the government never even asked because they don't care. They don't care about names of fake names. And they would never ask. Can I ask how is this supposed to work? You repeatedly talk about the arguments of counsel and when there is an evidentiary dispute, do you think that that suffices or do you think the evidentiary showing must be, like, so we have a two-page proper. Do you think that perhaps the people who interviewed Tobias should have taken a stand and talked about what he disclosed? Well, I mean, that was what Margaret Brooke, you know, suggested that at the first day of the hearing. Just as I don't want to hear from the witness, I don't want to hear from the Postal Service guy. I want to see the summary. You know, that could have happened, that might have happened, and he would have won the safety. So you repeatedly cite a comment from counsel below about this was the hearsay statement from one of the agents that said this was the best property they've ever seen. I don't know, can we, what do we do with that? I mean, I think you accepted it. I mean, this wasn't refuted by anybody who was there. I that the parties in attendance, I would view it as almost a stipulated fact. Everybody there agreed that that was true. Then the question becomes, okay, isn't he entitled to the safety valve when it's an A-plus from everybody grading the book? I understand the court gets to make the decision, but if the court's going to reject it, it's got to have the kind of basis to do so like, for example, in cases where that occurs. But we're more like Barron, where the court's standing in the shoes of the prosecutor who tried to deny the safety valve but didn't have the evidence to do it. I think that's what this is. Okay. Well, thank you, and you have rebuttal time. Thank you, Your Honor. May it please the Court, Margaret Sweeney on behalf of the United States. For 15 years, Lance Tobias packaged and shipped drugs across the United States for various people who hired him for this service. He also received drug proceeds in the mail. And looking at the evidence in the light most likely to support the district court's decision, the undisputed facts here show that Mr. Tobias was engaged in this conduct for 15 years, that he charged each of his customers based on the types of drugs that he was packaging and shipping, that he was charging a percentage of the drug proceeds that he would receive in return. And it is undisputed that he claims he did not know any information about any of the people he worked with for 15 years. The record of these undisputed facts supports the district court's decision that his claim of not knowing anything about these people was unbelievable. Your Honor, the government has not changed its position. The government maintains that the information that Tobias provided at the proffer was truthful. It nevertheless is reasonable for the government to defend the court's position that it was the information Tobias didn't provide that prohibited him from receiving the safety belt. In fact, in the Adu case, I know that counsel has brought up the fact that the government did not ask anything about the identities of any of these other people. But in Adu, this court found that it wasn't the government's responsibility to ask the questions. Even if the defendant had responded to all the questions that the government asked, the court could independently find that the defendant nevertheless did not meet the safety belt because it was his burden. If the government had followed up at the time, maybe he would have been able to explain the lack of information and the lack of a reason why he wanted to know anybody. But it's almost like he didn't get the opportunity to do that. And then by the time of sentencing it was too late because it says it has to be before sentencing. That strikes me as a little unfair to defendants. It's always difficult to prove a negative. Did I disclose a good thing? So what's the response to that? So in Collins, this court said that the defendant, part of his burden is to meet the court's misgivings about his proffer. And Tobias had the opportunity to do that here. There was not just one sentencing hearing. There were two sentencing hearings. After the first sentencing hearing, Tobias certainly understood what the court's misgivings about his proffer were. And at no point during the hearing did Tobias attempt to explain why he didn't know this information, how he communicated with his customers such that he wouldn't have known the information that the court was concerned about. Instead, Tobias stood by the fact that he did not know any of this information, which the court found helpful. So it was hypothetically. So we had the two hearings. There was the first one and the court says, I want to see the proffer. What if Tobias had said, I want to do another interview? And then Tobias disclosed a whole bunch of more information. Do you think we could consider that information in terms of what if he disclosed everything? Or do you think it would come too late because the first sentencing hearing had already occurred? I don't think that would have been too late. And that was not an opportunity that Tobias availed himself of. Instead, he stood on the fact that he claimed he did not know this information. And he never presented that opportunity to himself or even tried to say at the sentencing hearing additional information that would have met his burden. So is there one remedy to potential unfairness concerns? If a district court holds a hearing, the district court says, I do have some misgivings about whether there has been full disclosure. At that point, is it theoretically possible for the parties to get together and say, okay, well, let's postpone our sentencing and then have another kind of meeting and then have that work in that fashion? Because the concern is this kind of unfairness concern. If you have one shot, the district court finds out you could have cured it, but then you're not given an opportunity to. This, at least potentially, could be a way to get that opportunity. Yes, Judge. And anecdotally, for what it's worth, I've had cases where that's happened, where the government has opposed the safety valve and the court has sent us back for another proffer. So I have had that happen before. And that was a remedy that certainly was available to Tobias. Knowing his burden, he could have explained to the court how he didn't know this information, but instead he stood by a claim that he did not know that information. And the court was justified in logically looking at the facts. The fact that he was involved in this for 15 years, was working on a commission-based system. In fact, in his proffer... Did the government ask for, in that first hearing, what exactly was the government's reaction at that point? Did they ask for another proffer or opportunity to meet with Tobias? No, Judge. And Tobias, knowing it was his burden, did not ask to meet again with the government. It was Tobias's position that he didn't have any more information. I mean, he stood on the proposition that even if he met with the government again, he had no additional information to provide. So if you read the record and the assertions of his counsel, another proffer would have been fruitless because he would not have had any additional information to give. And that's what... And was that the government's position also? Whether he... That it would have been fruitless to have another proffer? I think that the district court's position that the factual scenario of his business model, how things worked, lends itself to the belief that Tobias certainly does know additional information about his customers, how he communicated with his customers... I'm asking, though, what was the government's position in that first hearing? Did the government take the position that it might be fruitful to have another proffer? The government wasn't asked about an additional proffer. The government took the position... Did it say anything about whether it could get more information from Tobias? No, it did not judge. And touching a little bit on the issues that counsel raised in his opening, there is a difference here with information that's material in a safety ballot proffer as opposed to information that's material in a substantial assistance proffer, particularly in light of the fact of what a district court is supposed to review in terms of the government's sentencing for those two things. In a safety ballot proffer, it's the defendant's burden to show that he has presented, truthfully, all information he knows about his offenses. And the court is supposed to independently review that proffer. Under a substantial assistance scenario, we're looking for information that's assisting the government. And the district court is supposed to give deference to the government's position in a substantial assistance scenario. And in fact, the government has to bring a substantial assistance to the court. Correct, Judge. It is not the defendant's burden in that case. Because it's the defendant's burden here in a safety belt, it was his burden to show that he had truthfully provided all the information in his position, that he did not know this information, was not credible to the district court, and the record supports the district court's position. This is a kind of a procedural evidentiary point that I should have turned on the other side. How is the defendant supposed to prove adequate cooperation? Usually, you think of you prove things through evidence. Evidence is witness, testimony, and oath in this undisputedly authenticated exhibit. So you have the one document, and then you just have essentially arguments by counsel, which we don't generally view as evidence. Does the government have a position on how defendants should generally prove these types of full disclosures or adequate cooperation? Does the defendant have to call government agents to the stand? Would the government be inclined to allow that to happen? So in terms of calling an agent at the stand, at sentencing, that's usually something that the government offers up. And in this case, as counsel pointed out, the government did offer the agent's testimony. But particularly in this case, the defendant had the report of his proffers and had it after the first sentencing hearing. So he would have known the facts that were presented to the court, and he could have supplemented that report either in writing, he could have himself testified at the hearing, at the sentencing hearing. He could have made it part of his allocution as well. He didn't do any of that. Why didn't the agents, there was a suggestion that the agents didn't testify because the district court didn't allow them to testify. Is that true? Why weren't the agents called at the second hearing? So at the first hearing, the agent was there and the government offered up the testimony, and the court said it wanted to see the proffer report. At the second hearing, I don't know if it's reflected in the record, but I don't believe that the agent was there because the court had received the proffer statement at that point, the written report. So there was never a ruling by the court excluding the agent's testimony? No, no judgment. The proffer report, it's just so conclusory that if there was a very lengthy meeting, I'm not certain the proffer report would have gotten into all the details of the meeting. Wasn't it just two pages and a couple paragraphs? It is two pages. How long was it? Do we know how long the meeting was? Judge, I can submit I was there. I think it was an hour. I will point the court to the first page of that proffer report. In the last paragraph, there's a portion of what Tobias presented where it says he knew what type of drug his customers sold and charged his fee based on that knowledge. I think that, Judge, is a concession that he knew these customers because these customers were repeat customers, and it was justified for the district court to find that his statement that he didn't know who these people are or any identifying information about them was unbelievable. So that might very well be true. It just seems a little bit incumbent on the United States if it's going to offer a safety valve reduction to elicit the questions. Wouldn't that be a better practice at least going forward to say, ah, yes, I see, you're Like, if you don't ask the questions, there is something to the point of how is he supposed to know what you want to know if you don't ask him? Certainly, Judge, but this court has found that because it's the defendant's burden, although the defendant may answer all the questions of the- I understand that on the law, and you might win this case on that ground. I'm not saying that you might, but I'm just saying how about going forward practices of the United States Attorney's Office? It seems like you're putting yourself kind of in a bad position, right? Why are people going to want to deal with you in the future if you present these kinds of properties as an A+, and then a judge says no, maybe you need to elicit some more questions. Certainly, Judge, and I think in certain contexts that may be, you know, that may be appropriate. Nevertheless, the government maintained that the information he did provide, in the government's view, was satisfactory for the government to represent in sentencing that he had met the fifth prong of the safety valve. It was the court that believed that he needed to provide additional information. Were the agents available at both hearings for Mr. Tobias to call them as witnesses? They would have been if he had asked for the agent to be present. I can't, I don't believe it's reflected in the record that the agent was at the second hearing. I don't believe that the agent was, although I can't recall specifically. Can we talk about the sentencing question for a minute? So you seem to assert that the district court did calculate the guidelines range. I'm not sure that's right under Gates. It seems to me that the district court did not calculate the guidelines range. But I'm wondering about, if we assume that that's right, that the district court didn't calculate the guidelines range, we're on plain error here because the defendant did not object when the Boston question was asked. What about Martinez, is it Molina Martinez? Yeah, from the Supreme Court, that says these anchoring effects, a miscalculation of the guidelines is basically always prejudicial. Mr. Tobias says, well, I understand there's a mandatory minimum here, but we have a problem with respect to the fine. The fine is pegged to the guidelines. So do you think Molina Martinez requires us to send this back to find that there's, he got over Prom 3 of the plain error hurdle or no? So I'm going, my time will likely run. May I continue to answer? Sure. Thank you, Judge. So first I would say that even if there was error in the calculation related to the fine, that such an error didn't affect his substantial rights because it's undisputed that that fine was within the guideline range. The guideline range was in the PSR, I believe it's $20,000 to $8 million. The defendant did not object to the PSR, did not object to the fine. Molina Martinez says even when the guidelines range, at least with respect to custody, would have been, even when the sentence would have been within the properly calculated guidelines range, they still find prejudice because of the anchoring effects of the guidelines and it could have been a little lower for instance in the custody context. Why shouldn't that apply to fines as well? So it could have been $30,000 to $8 million or it could have been as low as $20,000 to $8 million. And if he was thinking $30,000 to $8 million, he picked $100,000, but if he was thinking $20,000 to $8 million, it could have been $95,000 or something to that effect. So why wouldn't that be the direct correlation with Molina Martinez? Well, I think that the record is clear that the court was looking at the net assets that the defendant had, that the court found that the defendant had net assets of $200,000. There's also, in the record, the defendant identified an additional property that wasn't initially included in the PSR. And so the court made findings on the record that the defendant had an ability to pay and in fact imposed a fine that was under the net assets of the defendant. So I believe that in terms of assessing a range, the court carefully considered what the defendant's ability to pay was and came up with a fine. Do you think Molina Martinez should apply in the same way to fines as it does to custodial sentences? So the presumptive prejudice in a custody context. I don't know that there are any cases that have extended to the fine context. I'm not aware of any, Judge. So it's an open question. I mean, you could just take it to its logical conclusion if there's guidelines or guidelines. What's your best argument for why fines would be different than custodial sentences? Well, Judge, in terms of under plain error review, the substantial rights of the defendant in terms of custody are substantially more significant than in terms of a fine, particularly here when the fine imposed was under the net assets the defendant himself claimed. Okay. Well, thank you for your argument. Thank you, Judge. Is there a rebuttal? Yeah, thank you. Just briefly, meet the misgivings. That's, I guess, the thing that the government's arguing that Mr. Tobias should have done, meet the misgivings. But again, it comes back to if you don't know something, the law is clear. You're not required to make it up. You're not required to make things up. You're only required to provide that which you know. And if you say, and he did say, he did in his allocution say, this is on page ID 273, he did address this in his allocution. We just don't, I don't know the names of these people. That's something people keep secret. I've been to FedExes and UPSs, all my career mailing stuff. You never know who the people are you're dealing with. I mean, that's not incredible to believe that. I just reject that, and I think the court should reject that. And remember, too, the burden here is preponderance. He's got the burden, right, but it's a preponderance burden. And, you know, if you sort of lay it all out here, government says it's an A+. The postal guys were great with it. The defense lawyers representing it was good. Here's the two-page proffer. It was an hour long. You know, not everything is recorded in that two-page proffer. When you lay that all out and it's tilting it, all you have to do is tilt it. That's preponderance. He met the preponderance. I understand Judge Adams was skeptical, but skepticism isn't sufficient. I mean, the case law is clear. Skepticism isn't enough. Just because you have a gut feeling isn't enough. I understand courts get gut feelings, especially trial courts who are in trials. You know, you do develop gut feelings, but there has to be evidence. Even if you're a judge, there has to be evidence that Tobias knew the things you're claiming he should have disclosed, and there's no evidence of that. And the type of evidence that typically will satisfy that isn't here. Let me just ask this. Why isn't it your client's burden then to provide the evidence? Like your client could have offered to testify himself, right? And then the judge could have made a credibility finding. Well, I suppose, I don't, was that really necessary though, given the sort of what the Well, that's what we're trying to figure out. But here's the thing, but if what you're missing, if what Tobias was alleged to be missing is these things that he claims he didn't know, what good would it really have been? What good would the testimony have been? So that's the entire, the entire debate is whether he's being truthful when he says he doesn't know these things. And the court has made a credibility determination that I don't believe he was. Yeah, but judge, that credibility decision is not grounded in any evidence like it typically is required to be when it's the government. And the kind of evidence would be, here's an example of where you, you know, you're telling me one thing about this drug business, and here's an example, for example, when there was a trial, and there's conflicting evidence. Or when there was some recordings, and now you're saying something different than what's on the recordings. Or there's some prior statement, and now you're saying something different than Or there's something that we expect you would have known, and you claim you don't know it. Okay, but names, he explained. I don't know names, and here's why. And he did explain that. There's no inconsistency. That's the thing, there's none, there's no inconsistency. You know, and I think that's just unfair. I think he's been whipsawed here to some extent, and it's really unfair, and the government did flip-flop on that. Okay. And I agree with you, Judge Larsen, and whoever made the point, I think that with respect to the fine, you know, the court, you know, has to calculate the guidelines. That has to be, you know, step one. Do you all have any other questions? And it didn't happen. Thank you so much. Thank you. We will take the case under advisement, and the clerk may call the next case.